# EXHIBIT F

# Agfa Finance Group

Agfa Corporation, 200 Ballardvale Street, Wilmington, Massachusetts 01887-1069 (978) 657-7700

**Lease Number :** 9679

## LEASE AGREEMENT

| Lessee: | Vendor: |
|---|---|
| KINGSTOWN CAMERA, INC.<br>566 KINGSTOWN ROAD<br>WAKEFIELD, RI 02879<br><br>NORMAN DUROCHER<br>401-783-1820 | AGFA CORPORATION<br>100 CHALLENGER ROAD<br>RIDGEFIELD PARK, NJ 07760<br><br>RON DELEHANTY/JOE PEGO<br>201-440-0111 |

Installation Site: 105 FRANKLIN STREET WESTERLY, RI 02891

| Description of equipment | Quantity | Unit Price | Amount |
|---|---|---|---|
| X NEW USED RECONDITIONED | | | |
| SEE ATTACHMENT "A" FOR EQUIPMENT LISTING | 1 | $ 130,245.00 | $ 130,245.00 |
| SALES TAX (7%) | 1 | $ 8,907.50 | $ 8,907.50 |
| | | $ | $ |
| ($1 BUYOUT) | | $ | $ |

| Term of Lease Number of Months | Initial Payments First | Initial Payments Last | Number of Payments To be billed | Monthly Payments | Monthly Tax | Total Monthly Payment | Trades/ Discounts | ($ ) |
|---|---|---|---|---|---|---|---|---|
| 63 | 0 | 0 | 60 | SEE | ATTACHED | AMENDMENT | Total Price | $ 139,152.50 |

ENTIRE AGREEMENT: THIS AGREEMENT CONSISTS OF THE FACE AND ADDITIONAL PAGES AND CORRECTLY SETS FORTH THE ENTIRE AGREEMENT BETWEEN LESSOR AND LESSEE WITH RESPECT TO THE USE, POSSESSION AND LEASE OF THE EQUIPMENT. LESSEE ACKNOWLEDGES THAT HE/SHE HAS READ THIS AGREEMENT, UNDERSTANDS IT AND AGREES TO BE BOUND BY ITS TERMS AND CONDITIONS. NEITHER PARTY SHALL BE BOUND BY ANY STATEMENT NOT CONTAINED IN THIS AGREEMENT. THE TERM "LESSEE" SHALL MEAN ANY AND ALL LESSEES WHO SIGN HEREUNDER, EACH OF WHOM SHALL BE JOINTLY AND SEVERALLY BOUND THEREBY. THE AGREEMENT WILL NOT BE BINDING ON THE LESSOR UNTIL ACCEPTED BELOW.

1. **LEASE:** Lessor hereby agrees to lease to Lessee and Lessee hereby agrees to lease from Lessor, subject to the terms of this Lease Agreement (the "Agreement"), all personal property and other property of Lessor (all of which, together with any attachments, replacements, parts, substitutions, additions, repair and accessories at any time incorporated therein and/or affixed thereto, herein called "Equipment") described above and in any schedules now or hereafter attached hereto and made a part thereof.
2. **TERM AND RENT:** The initial term of this Agreement and the Lessee's obligation to pay rent hereunder shall commence upon the date the Equipment is delivered to the Lessee and shall end upon the expiration of the number of months specified above after the commencement of the term hereof. Lessee shall also be responsible for all transit insurance, transportation costs, handling costs, and taxes and/or assessments levied against the Equipment. THIS LEASE IS A NON-CANCELLABLE NET LEASE. ALL RENT AND OTHER AMOUNTS DUE HEREUNDER SHALL BE PAYABLE UNCONDITIONALLY, WITHOUT ANY DEDUCTION, COUNTERCLAIM, SET-OFF, FURTHER NOTICE OR DEMAND, TOGETHER WITH ALL OTHER PAYMENTS DUE. Any nonpayment of rent or other amounts due hereunder shall result in the obligation of Lessee promptly to pay also a late charge of five percent (5%) per month of any overdue amounts, but not in excess of the amount allowed by law.
3. **DELIVERY AND ACCEPTANCE:** The Equipment shall be shipped directly to the Lessee by the Vendor. Lessee agrees to accept such delivery and, where appropriate, installation of the Equipment and upon receipt and installation thereof to execute and deliver to Lessor the Delivery and Acceptance Certificate submitted by the Lessor or alternatively within five (5) days of delivery and installation, inform Lessor in writing of non acceptance and the specific reasons therefore. Lessee further agrees that the validity of this lease shall not be affected by any delay in the shipment of the Equipment by the Vendor. In the event that Lessee has not executed and delivered to Lessor the submitted Delivery and Acceptance Certificate or a written statement specifying the reasons for non-acceptance within five (5) days of receipt and, where appropriate installation of the Equipment, then it shall be conclusively presumed that the Equipment is acknowledged to be in good working order and that Lessee has accepted and is satisfied that the Equipment constitutes the Equipment specified in this Agreement.
4. **PREPAID RENT:** Upon execution of this Agreement, Lessee shall tender to the Lessor such sums as required by Lessor which the Lessor shall apply as payment of rent hereunder.
5. **NET LEASE:** This Agreement shall be deemed to be a net lease and the rent herein set forth shall be net to Lessor and the Lessee shall be solely responsible for all sales, use, property excise or other taxes or duties whatsoever, together with any other imposts, premiums, fees, expenses, costs, license fees and other charges levied or incurred in connection with the purchase, sale, lease, operation, maintenance and insurance of the Equipment and replacement of parts therefore for its own account and to the complete exoneration of the Lessor (apart from the payment of the Lessor's income taxes). In the event the Lessor pays any such amounts, Lessee shall reimburse the Lessor therefore forthwith upon demand.
6. **TITLE; IDENTIFICATION; PERSONAL PROPERTY:** Title to Equipment shall at all times remain in Lessor, and Lessee, at its own cost and expense, shall protect and defend the title of Lessor. The Equipment shall remain personal property irrespective of its use or manner of attachment to realty, and Lessee agrees to take such action at its expense as may be necessary to prevent any third party from acquiring any interest in the Equipment as a result of its attachment to realty. If requested by Lessor, or required by federal, state or local law, Lessee shall, at Lessee's expense, affix or attach to the Equipment and maintain a sign or other form of notice to disclose Lessor's ownership of the Equipment. Lessee agrees not to sell, assign, sublet, pledge, hypothecate, or otherwise encumber or suffer a lien or security interest upon or against any interest in this Agreement or the Equipment or to remove or relocate the Equipment without Lessor's prior written consent.
7. **DELIVERY AND LOCATION:** The Equipment shall be delivered to and thereafter kept at the "Installation Site" specified above, or if not so specified above, at Lessee's address specified above, and shall not be removed therefrom without prior written consent of Lessor.
8. **ASSIGNMENT:** Lessee shall not assign, transfer, pledge or otherwise dispose of this Agreement or its interests hereunder or enter into and sublease, lend the Equipment, or permit it to be used by anyone other than the Lessee or Lessee's employees without the prior written consent of Lessor. Subject to the foregoing, this Agreement shall inure to the benefit of and be binding upon the heirs, legatees, personal representatives, survivors and assigns of the parties hereto, Lessor may assign or transfer this Agreement and Lessee waives notice of any such assignment. Lessee hereby waives any and all claims, setoffs, and defenses whatsoever against Lessor's assignee. Lessor may grant a security interest to another in the Agreement or the Equipment and Lessee's rights are subordinate to the rights of any such secured party.
9. **USE, MAINTENANCE AND REPAIR:** Lessee shall not modify or alter the Equipment without the written consent of Lessor. Lessee will cause the Equipment to be operated in accordance with applicable manufacturer's manuals and/or instructions, by competent and duly qualified personnel only, in accordance with applicable governmental regulations, if any, and for business purposes only. Lessor shall have the right from time to time during normal business hours to enter upon Lessee's premises or elsewhere for the purpose of confirming the existence, condition, and proper maintenance of the Equipment. Lessee agrees to procure and maintain in effect all licenses, certificates, permits and other approvals and consent required by federal, state, county, municipal, or foreign laws and regulations in connection with the possession, use, operation and maintenance of the Equipment. Lessee, at its own expense, shall (a) maintain the Equipment in good and safe operating order, repair and condition and (b) pay for all fuel, service, inspections, overhauls, replacements, substitutions, materials and labor necessary therefore.
10. **WARRANTIES:** LESSEE LEASES THE EQUIPMENT "AS IS." LESSOR MAKES NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, AS TO THE DESIGN OR CONDITION OF, OR AS TO THE QUALITY OF, THE EQUIPMENT, ITS MATERIAL OR ITS WORKMANSHIP LESSOR MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE EQUIPMENT FOR ANY PARTICULAR PURPOSE OR AS TO ITS TITLE TO THE EQUIPMENT OR ANY COMPONENT THEREOF, OR AS TO ANY OTHER MATTER. LESSEE AGREES THAT ALL SUCH RISKS AS BETWEEN LESSOR AND LESSEE, ARE TO BE BORNE BY LESSEE, AND THE BENEFITS OF ANY AND ALL IMPLIED WARRANTIES OF LESSOR ARE HEREBY WAIVED. LESSEE HAS REVIEWED AND APPROVES OF THE PURCHASE CONTRACT FOR THE EQUIPMENT AND/OR HAS BEEN PROVIDED THE NAME AND ADDRESS OF THE VENDOR. LESSEE ACKNOWLEDGES THAT IT HAS SELECTED THE EQUIPMENT ON THE BASIS OF ITS OWN KNOWLEDGE AND JUDGMENT AND EXPRESSLY DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY LESSOR. Lessee understands and agrees that neither the vendor nor any agent of the vendor is an agent of Lessor or is authorized to waive or alter any term or condition of this Agreement or of any schedule or other related document under this Agreement. NO REPRESENTATION AS TO THE EQUIPMENT OR ANY OTHER MATTER BY THE VENDOR SHALL IN ANY WAY AFFECT LESSEE'S DUTY TO PERFORM ITS OBLIGATIONS AS SET FORTH IN THIS AGREEMENT, SCHEDULES OR OTHER RELATED DOCUMENTS. IN NO EVENT SHALL LESSOR BE LIABLE FOR ANY INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR ANTICIPATORY PROFITS. Lessee understands and agrees that it is to assert any and all such claims against the vendor or manufacturer of the Equipment and that Lessee shall not bring claim or suit or make settlement with the vendor or manufacturer without Lessor's consent. Lessor shall furnish to Lessee such warranties as are furnished by manufacturer to lessor under the applicable purchase order and/or purchase agreement, and make any assignment to Lessee required to transfer the rights therein to Lessee. Lessor agrees to cooperate with and assist Lessee in enforcing warranties against the manufacturer. LESSOR IS NOT RESPONSIBLE FOR ANY REPAIRS, SERVICE OR DEFECTS IN EQUIPMENT OR OPERATION THEREOF.
11. **TAXES, INDEMNITY:** Lessee agrees to comply with all laws, regulations and orders relating to the Agreement and Equipment, and to assume the risk of liability arising from or pertaining to the possession, operation or use of such Equipment. Lessee further agrees to pay all taxes, assessments, and the like when levied by the appropriate authority. Lessee agrees to file tax returns and reports upon request of Lessor, and shall keep records of the same. All such tax obligations shall survive the termination of the Agreement. Lessee hereby agrees to indemnify, hold safe and harmless from and covenants to defend Lessor against any and all claims, costs, expenses, damages and liabilities, obligations, losses, suits and expenses imposed on, incurred by, or asserted against Lessor arising from or pertaining to the lease, use, possession, selection, purchase, delivery, maintenance, condition, operation (such indemnity expressly includes any claim arising from strict liability in tort, defect, trademark, anticipatory, profits, and consequential damages) transportation, return or other disposition, storage, any damage loss, or destruction of such Equipment. The indemnities contained in this Paragraph shall survive the termination of this Agreement.

APR 1 3 2004



NUD (Initials)

12. **LESSEE'S WAIVERS:** To the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon a Lessee by Article 2A of the Uniform Commercial Code as adopted in any jurisdiction, including but not limited to Lessee's rights to: (a) cancel this Lease; (b) repudiate this Lease; (c) reject the Equipment; (d) revoke acceptance of the Equipment; (e) recover damages from Lessor for any breaches of warranty or for any other reason; (f) claim a security interest in the Equipment in Lessee's possession or control for any reason (g) deduct all or any part of any claimed damages resulting from Lessor's default, if any, under this Lease; (h) accept partial delivery of the Equipment; (i) "cover" by making any purchase or lease of or contract to purchase or lease Equipment in substitution for those due from Lessor; (j) recover any general, special, incidental, or consequential damages for any reason whatsoever; and (k) specific performance, replevin, detinue, sequestration, claim, and delivery of the like for any Equipment identified to this Lease. To the extent permitted by applicable law, Lessee also hereby waives any rights now or hereafter conferred by statute or otherwise which may require Lessor to sell, lease or otherwise use any Equipment in mitigation of Lessor's damages as set forth in Paragraph 17 or which may otherwise limit or modify any of Lessor's rights or remedies under Paragraph 17. Any action by Lessee against Lessor for any default by Lessor under this Lease, including breach of warranty or indemnity, shall be commenced within one (1) year after any such cause of action accrues.

13. **LOSS, DAMAGE OR DESTRUCTION OF EQUIPMENT:** Lessee shall bear all risks of damage to, or loss or destruction of, any Equipment during the term of the Agreement and until such Equipment has been returned to Lessor. Except as otherwise herein expressly provided, no such damage to, or loss of, destruction of, any Equipment, shall impair any obligation of Lessee to Lessor under this Lease. If any Equipment becomes lost, stolen or destroyed, or irreparably damaged from any cause whatsoever, or if any item of Equipment or Lessor's title thereto shall be subject to any condemnation or seizure (all referred to as a "Casualty Occurrence") Lessee shall, promptly give written notice to, and shall, within thirty (30) days after such Casualty Occurrence, pay Lessor an amount equal to the sum of the (i) the accrued rent payable to such item from the date of such Casualty Occurrence up to and including the date of such payment, plus (ii) in the event of loss or damage of any kind whatsoever to the Equipment, or any part thereof, Lessee shall (a) place the same in good repair, condition and working order; or (b) replace the same with like property in good repair, condition and working order; which property shall thereupon become subject to this Agreement or (c) pay Lessor therefore in cash the remaining installments of rent plus the sum of twenty percent (20%) of the actual cost to Lessor of such Equipment. Any insurance proceeds received as the result of a Casualty Occurrence shall be applied first in reduction of any then unpaid obligation of Lessee to Lessor hereunder and secondly in reduction of Lessee's obligation in accordance with sections (a)-(c) above. The balance of the insurance proceeds, if any, shall be paid to Lessee.

14. **INSURANCE:** Lessee shall obtain and maintain for the entire term and until the Equipment is returned to Lessor, at its own expense, property damage and liability insurance and insurance against loss or damage to the Equipment, including, without limitation, loss by fire (including so-called extended coverage) theft, collision and such other risks of Loss as are customarily insured against on the type of Equipment lease hereunder and by business in which Lessee is engaged, in such amounts, in such form, and with such insurers as Lessor shall reasonably approve. The amount of insurance against loss or damage to the Equipment shall be twenty percent (20%) of the actual cost to Lessor of such Equipment plus the installments of rent then remaining unpaid hereunder. Each policy will name Lessor as an additional insured and loss payee thereof as its interests may appear, shall contain a clause requiring the insurer to give Lessor at least 30 days prior written notice of any alteration in the terms of such policy or of the cancellation thereof and provide that the policy will not be invalidated as against Lessor (or its assignee) for any violation of any term of the policy or application by Lessee. Each policy shall provide that the payment of claims to both Lessor and Lessee, as their interests may appear. Lessee shall furnish to Lessor a certificate of insurance or other evidence satisfactory to Lessor that such insurance coverage is in effect, provided, however, that Lessor shall be under no duty either to ascertain the existence of or to examine such insurance policy or to advise Lessee in the event such insurance coverage shall not comply with the requirements hereof. Each policy shall further provide that the Lessor's interest, as it may appear, will not be invalidated by the acts, omissions, or neglect of any other. Lessee hereby grants Lessor a limited power of attorney to endorse checks, drafts or the like for Lessee.

15. **FURTHER ASSURANCES:** Lessee will promptly execute and deliver to Lessor (or any assignee of Lessor) such further documents and take such further action as Lessor or such assignee may request in order to more effectively carry out the intent and purpose hereof and to fully protect Lessor's or any such assignee's interest hereunder in accordance with the Uniform Commercial Code or other applicable law, including without limitation, the filing of financing and continuation statements. Lessee hereby authorizes Lessor or its agents or assigns to sign and execute on its behalf any and all necessary documents to effect any such filing as aforesaid (including the filing of any such financing or continuation statements) without further authorization of Lessee. It is the intention of Lessor and Lessee that this Agreement be interpreted as a true lease, however, as may be required by applicable law, Lessee, as debtor, grants a security interest to Lessor, as secured party, in any and all right, title and interest which Lessee now or may hereafter have in the lease property. This grant of a security interest is not to affect adversely the interpretation of this Agreement as true lease.

16. **EVENTS OF DEFAULT:** An Event of Default shall occur hereunder if Lessee (i) fails to pay any installment of rent or other payment required hereunder or under any other agreement with lessor when due and such failure continues for a period of 10 days; or (ii) fails to perform or observe any other covenant, condition or agreement hereunder or breaches any representation or provision contained herein or in applicable certificates of acceptance, assignments of purchase order invoice, lease schedules or purchase orders, and such failure or breach shall continue unremedied for a period of 45 days after written notice is received from Lessor; or (iii) shall commit an act of bankruptcy or become insolvent or bankrupt or make an assignment for the benefit of creditors or consent to the appointment of a Trustee or Receiver or bankruptcy, reorganization, or insolvency proceedings shall be instituted by or against Lessee and any such act or appointment shall not be vacated, discharged or dismissed in a period of 30 days; or (iv) shall be in default under any bankruptcy, reorganization, or insolvency proceedings; or (v) Lessee breaches any warranty or provision of the Lease or its accompanying instruments; or (vi) Lessee ceases to do business as a going concern; or (vii) Lessee admits in writing the inability to pay debts as they become due; or (viii) if any Lessee's property is attached by any creditor through replevin, detinue, sequestration or levy; or (ix) if Lessee's shareholders, members, or partners take action to dissolve or liquidate; or (x) if Lessee defaults under any other obligation it may otherwise have to Lessor.

17. **REMEDIES OF LESSOR:** Upon the occurrence of any Event of Default and at any time thereafter Lessor may, at its option, do any one or more of the following: (1) declare this Agreement in default whereupon, the entire amount of rent remaining to be paid over the balance of the lease term of all Equipment from the date of default, shall become immediately due and payable with or without notice to Lessee; (2) exercise any right or remedy available to Lessor under the Uniform Commercial Code or any other applicable law; proceed by appropriate actions at law or in equity to enforce performance by Lessee of the covenants and terms of this Agreement and/or to recover damages for the breach thereof; (3) terminate this Agreement upon notice to Lessee; and demand that Lessee return all Equipment to Lessor. Lessee shall be liable for all reasonable collection fees, costs and expenses, including attorneys' fees, arising from event of default and the exercise of Lessor's remedies hereunder; (4) require Lessee to gather and assemble the Equipment upon demand and deliver it to Lessor at its own expense; (5) enter Lessee's premises wherever the equipment is located and take possession of the same; (6) to proceed against all Lessee's assets, however held; (7) to perform any Lessee's obligations under the Agreement should Lessee fail to do so and Lessee agrees to repay Lessor for such performance; Lessee waives any right to claims for loss arising from Lessor's taking possession of the Equipment; Lessee agrees to pay Lessor for its expenses of enforcement of this Agreement, including those of retaking and selling the equipment and reasonable attorney's fees Lessor may forthwith recover from Lessee as liquidated damages for breach of this Lease, and not as a penalty, an amount equal to the sum of the entire amount of rent and all other charges due under this Agreement or incurred under the provisions of this paragraph which would have accrued for the balance of the lease term attributable to such Equipment computed from the date of Lessee's default There shall be added to such amounts interest at eighteen percent (18%) per annum (or the maximum per annum rate of interest permitted by law, whichever is less) from the date of Lessee's default up to the date of payments of such amounts to Lessor. In the event that any court of competent jurisdiction determines that any provision of this Paragraph is invalid or unenforceable in whole or in part, such determination shall not prohibit Lessor from establishing its damages sustained as a result of any breach of this Agreement in any action or proceedings in which Lessor seeks to recover such damages. Any repossession or resale of any Equipment shall not bar an action for damages for breach of this Agreement, as hereinabove provided, and the bringing of an action or the entry of judgment against Lessee shall not bar Lessor's right to repossess any or all Equipment. The remedies herein provided in favor of Lessor, shall not be deemed to be exclusive, but shall be cumulative and shall be in addition to all other remedies in Lessor's favor existing in law, in equity or in bankruptcy.

18. **END OF LEASE OPTIONS:** Ninety days prior to expiration or termination of the lease term, whether by passage of time or otherwise, Lessee at its option, shall: (1) purchase all, but not less than all of the Equipment covered under each individual schedule on an "as is, where is" basis at its then Fair Market Value; or (2) renew this Agreement in accordance with Lessors then effective policies; or (3) forthwith surrender and return possession of the Equipment. In such event Lessee shall, at Lessee's expense, disconnect and otherwise prepare the Equipment for shipping. Lessor shall, at Lessee's expense, select and schedule an appropriate mode of transportation for the Equipment involved. The Equipment will be unencumbered and in the same condition as when received by Lessee, except for normal wear and tear. Options (1) and (2) above shall not be available if Lessee is then in default under this Agreement. The rights under options (1) and (2) above are not assignable without the written consent of the Lessor and shall terminate upon Lessee's default under this Agreement. Contemporaneous with shipment of the Equipment, Lessee shall pay to Lessor an Equipment transfer fee equal to one percent (1%) of the total price of the Equipment. If none of the foregoing options in clauses (1), (2) or (3) of this section is duly exercised by lessee, this lease shall be automatically extended at the same monthly rent on a month to month basis. Lessee may terminate any such extended term on ninety (90) days prior written notice to Lessor and so long as with such notice, Lessee elects one of the options described in Clauses (1), (2) or (3) above.

19. **GOVERNMENTAL BODIES OR AGENCIES:** If Lessee is a governmental body or agency, the Lessee certifies (i) this Agreement represents a valid deferred payment obligation on behalf of a state or political subdivision, (ii) it has legal capacity to enter into this Agreement, and (iii) this Agreement is not in contravention of any statute, rule, regulation or governmental provision.

20. **EXPORT:** Lessee is responsible for compliance with U.S. export control regulations and will not export or re-export Equipment without first obtaining proper licensing from the United States Department of Commerce or any other agency or department of the United States Government, if required.

21. **SOFTWARE LICENSE:** In the event a vendor supplies licensed software and Lessor has agreed to rent such software to Lessee, Lessor and Lessee shall, following a review of the license and consultation with the vendor/licensor, agree on one of the following procedures: (i) Lessor will be licensed directly by the vendor/licensor and shall then sublicense, Lessee on identical terms as the license; or (ii) Lessee will be licensed by the vendor/licensor and the vendor/licensor shall acknowledge and agree in writing the Lessor will be invoiced for the initial fee, will not execute a license, and shall have the right to be in possession of the software in the event that the hardware is returned or repossessed by Lessor. Lessee and Lessor shall follow the vendor/licensor's standard procedure whenever possible, but shall not be obligated to do so if either Lessor or a Lessee determine that such procedure is not in its best interest. In all cases the vendor/licensor's consent to the procedure shall be obtained. Nothing contained herein shall be deemed to expand limitations on the amount of licensed software Lessor will rent to Lessee whether such limitations are contained elsewhere in this Agreement or in a separate agreement.

22. **STATEMENTS:** Lessor may require, from time to time and in such detail as Lessor may require, statements setting forth the financial condition and operations of Lessee. Lessee agrees to furnish such statements.

23. **AUTHORIZATION:** The undersigned is duly authorized to execute this Agreement on behalf of Lessee.

24. **MISCELLANEOUS:** This Agreement may not be amended except in writing executed by Lessor and Lessee, and shall be binding upon and inure to the benefit of the parties hereto, their permitted successors and assigns. Any provision of this Agreement which is unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. Lessor reserves the right to correct any clerical or mathematical errors. The captions of this Agreement are for convenience only and shall not define or limit any of the terms hereof. This Agreement shall in all respects be governed by, and construed in accordance with, the laws of the Commonwealth of Massachusetts. Lessee hereby consents to the jurisdiction and venue of the courts of the Commonwealth of Massachusetts in connection with any action or proceeding arising out of or related to this Agreement or any other transaction between parties hereto. In any such litigation, the Lessee waives personal service of any summons, complaint or other process and agrees that service may be made by certified or registered mail to it, at the address provided herein. All notices under this Agreement shall be delivered via certified mail, return receipt requested, to the addresses set forth herein. The Lessee waives trial by jury in any litigation arising out of or related to this Agreement

| Lessee (Please Print) KINGSTOWN CAMERA, INC. | Accepted for Agfa Corporation | |
|---|---|---|
| By (Signature) Deedra Dursch[illegible] | By (Signature) [illegible] | |
| Title Vice President | Title [illegible] | |
| Date 4-8-04 | Date [illegible]/04 | (Effective Date of Agreement) |

**THIS LEASE AGREEMENT CANNOT BE CANCELLED**

Attachment "A"

Vendor: Agfa Corporation
100 Challenger Road
Ridgefield Park, NJ 07660

RE: KINGSTOWN CAMERA INC.

| | Quantity | | |
|---|---|---|---|
| Dlab.1 | 1 | $ | 121,900.00 |
| Slide Carrier | 1 | $ | 1,750.00 |
| Passport/Combi Print | 1 | $ | 1,500.00 |
| D-Workflow | 1 | $ | - |
| Image Box Mobile W/XD Bluetooth & IR | 1 | $ | - |
| Image Box Mobile Upgrade | 1 | $ | 1,000.00 |
| Transfer Software | 1 | $ | 1,100.00 |
| Gigabit Network Switch | 1 | $ | - |
| Bridge Warranty | 1 | $ | 1,795.00 |
| Freight | 1 | $ | 1,200.00 |
| | Total Equipment Value | $ | 130,245.00 |

Acknowledgement: Aeedra Deurocher
KINGSTOWN CAMERA INC.

Vice President
TITLE

4-8-04
DATE

# AGFA FINANCE GROUP

Agfa Finance Group, Agfa Corporation, 200 Ballardvale Street, Wilmington, MA 01887-1069, (978) 657-7700

## LEASE AGREEMENT AMENDMENT STEP LEASE

This is an Amendment to Lease Agreement Number _____ between Agfa Corporation (Agfa) and KINGSTOWN CAMERA, INC. dated ______ (the "Agreement"). Terms defined in the Agreement have the same meanings in this Amendment, except that "Total Monthly Payment" shall mean the largest amount in the "Total Monthly Payment" column below.

Lessee shall pay, for the Lease Term, in accordance with the following schedule:

| | Terms in Months | Monthly Payment | Applied Tax | "Total Monthly Payment" |
|---|---|---|---|---|
| 1. | 3 | $ 0.00 | $ 0.00 | $ 0.00 |
| 2. | 60 | $ 2,631.37 | $ 0.00 | $ 2,631.37 |
| 3. | | $ | $ | $ |
| 4. | | $ | $ | $ |
| 5. | | $ | $ | $ |
| 6. | | $ | $ | $ |

Lease Term: 63 months.

This amendment is effective on the Effective Date of the Agreement.

Executed and agreed to by:

| | | | Accepted For: | |
|---|---|---|---|---|
| Lessee: | KINGSTOWN CAMERA, INC. | | Agfa Corporation | |
| By: | [signature] | | By: | [signature] |
| | (Signature) | | | (Signature) |
| Title: | Vice President | | Title: | Contract Administrator |
| Date: | 4-8-04 | | Date: | 6/1/04 |

# Lease Agreement Amendment (Property Tax Escrow)

Agfa Finance Group North America
Agfa Corporation 200 Ballardvale Street Wilmington, MA 01887-1069

This is an Amendment to Lease Agreement Number ___ between Agfa Corporation (Agfa) and KINGSTOWN CAMERA, INC. (Lessee) dated _______ (the "Agreement").

A. Terms defined in the Lease shall have the same meaning herein unless otherwise expressly set forth herein or otherwise required by the context hereof.

B. The following shall be an addition to and or an amendment to the Lease Agreement Terms and Conditions, and are hereby incorporated therein by reference.

Pursuant to the terms of this Lease Agreement, Lessee is responsible for any and all taxes levied against the Equipment leased hereunder. Pursuant to this Amendment, Lessee agrees to pay Agfa and Agfa agrees to bill Lessee monthly an amount equal to the estimated annual property tax assessment divided by (12). The Property tax amounts are estimates in that the assessment dates and amounts vary by jurisdiction, are subject to legislative action and may change without notice during the term of this Agreement. All money received from Lessee for Property tax shall be held by Agfa, in a non-interest bearing account. Once billed by the taxing authority, Lessee authorizes Agfa to pay the actual Property Tax amount using the money held in escrow. Any excess funds held by Agfa in escrow shall be carried forward to the next year and any annual shortages shall be promptly billed by Agfa and paid by Lessee upon receipt. Upon completion of the Lease term, after all applicable tax assessments or other amounts due Agfa by Lessee have been paid in full, Agfa shall promptly refund all sums remaining in the escrow account, without interest to Lessee, if any. If due to the timing of lien dates or if the initial term of the Lease is extended for any reason and Property Tax is applicable beyond the initial term, Lessee agrees to be billed and a pay lump sum annual amounts as applicable.

Equipment Cost: $130,245.00 (includes sales tax on property tax, if applicable)

| Tax Year | Estimated Annual Property Tax Amount (Plus $50.00 per annum handling charge) | Estimated Monthly Property Tax Amount (Est. Annual / 12) |
|---|---|---|
| 1. | $ 3,926.09 | $ 327.17 |
| 2. | $ 3,634.34 | $ 302.86 |
| 3. | $ 3,300.92 | $ 275.08 |
| 4. | $ 2,842.45 | $ 236.87 |
| 5. | $ 2,467.35 | $ 205.61 |

Sample calculation year one (Equipment cost x Year One depreciation factor x estimated tax rate= Estimated Annual tax. Estimated Annual Tax + $50.00 Handling Charge / 12 = Estimated Monthly Property Tax Amount). Calculation is repeated for each year with the requisite depreciation factors.

| | | | Accepted For: | |
|---|---|---|---|---|
| Lessee: | KINGSTOWN CAMERA, INC. | | Agfa Corporation | |
| | (Please Print) | | | |
| By: | Sheedra Hlurocher | | By: | Catherine Cissonio |
| | (Signature) | | | (Signature) |
| Title: | Vice President | | Title: | Contract Administrator |
| Date: | 4-8-04 | | Date: | 6/1/04 |